## (July 29, 1982)

In the Matter of JOHN AA. et al., Children Alleged to be Permanently Neglected. BERNHARDT S. KRAMER, as Commissioner of the Ulster County Department of Social Services, Respondent, v JOHN AA. et al., Appellants. — Appeal from a judgment of the Family Court of Ulster County (Elwyn, J.), entered April 5, 1979, which adjudged appellants' three children to be permanently neglected pursuant to article 6 of the Family Court Act. This case comes before us on remand from the United States Supreme Court. When last before us, the sole issue was whether the standard of proof fixed by section 622 of the Family Court Act — a fair preponderance of the evidence — was so low as to deprive appellants of due process of law. We held that it was not and affirmed the judgment terminating their parental rights (*Matter of John AA.,* 75 AD2d 910). The Court of Appeals dismissed the parents' appeal for lack of a substantial constitutional question (*Matter of Apel* [*Kramer*], 51 NY2d 768). On certiorari, the United States Supreme Court vacated our order and re-

manded the matter for further proceedings not inconsistent with the majority opinion which held that "[b]efore a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence" (*Santosky v Kramer,* 455 US 745, ___, 71 L Ed2d 599, 603). The threshold issue is whether this matter must be remitted to the Family Court for a new hearing. In its closing paragraph, the majority opinion of the Supreme Court states (455 US 745, ___, 71 L Ed2d 599, 617, footnote omitted): "We, of course, express no view on the merits of [appellants'] claims. At a hearing conducted under a constitutionally proper standard, they may or may not prevail." Appellants contend that this language requires a new evidentiary hearing at the Family Court level. We disagree. It is clear from the majority opinion that the Supreme Court's dissatisfaction with the procedure by which the State terminated appellants' parental rights was solely with the burden of proof employed by the fact finder in determining permanent neglect. Neither the procedural aspect of the evidentiary portion of the fact-finding hearing itself nor the elements necessary to establish permanent neglect were found lacking. We see no reason why the change in the standard of proof dictated by the Supreme Court should affect the validity of the portion of the hearing at which proof was taken. Nor do we see any useful purpose to be served by holding new hearings, which would only further delay a resolution of this matter.[1] The proof in the record either is insufficient under the new standard, requiring dismissal of the petition, or the proof, viewed under the new standard, supports a finding of permanent neglect, in which case the judgment should be affirmed. The Supreme Court's reference to "a hearing conducted under a constitutionally proper standard" must be considered as applying to the decision-making portion of the fact-finding hearing, since that is the only portion in which the standard of proof is relevant. Accordingly, we will review the sufficiency of the Family Court's determination under the more rigorous clear and convincing evidence standard (see *Matter of Janet AA.,* 88 AD2d 670). With regard to respondent's diligent efforts to encourage and strengthen the parental relationship, one of the elements necessary to establish permanent neglect (Social Services Law, § 384-b, subd 7, par [a]), there is uncontested proof that all of the relevant services within respondent's authority to provide or arrange were made available to appellants. They were informed of the availability of these services, which included family planning, family counseling, a nutritional aide, public health nursing, vocational rehabilitation, psychiatric counseling and transportation, and they were urged to take advantage of these services. Visitation with the children was also arranged by respondent. Accordingly, even under the clear and convincing evidence standard of proof, respondent has met his burden on the element of diligent efforts. The remaining contested element requires proof that appellants have failed substantially and continuously or repeatedly to maintain contact with or plan for the future of the children, although physically and financially able to do so (Social Services Law, § 384-b, subd 7, par [a]). To satisfy this element, respondent must prove *either* failure to maintain contact or failure to plan for the future (see *Matter of Orlando F.,* 40 NY2d 103, 109-110). Since respondent has not alleged that appellants failed to maintain contact with their children, the relevant issue is whether they failed to plan for the future of their children. The statute defines the required plan as follows: "to take such steps as may be necessary to provide an adequate, stable home and parental care for the child within a period of time which is reasonable under the financial circumstances available to the

---

1. The three children involved in this proceeding were placed in foster care in 1973 and 1974, and have been there since. The medical testimony given at the hearing in 1979 established that one of the children had become neurotic as a result of the doubt and confusion created by having two sets of parents and that a second child was well on the way toward a similar neurosis. The expert testified that further delay in resolving this case, one way or the other, could only be harmful to the children.

parent. The plan must be realistic and feasible, and good faith effort shall not, of itself, be determinative. In determining whether a parent has planned for the future of the child, the court may consider the failure of the parent to utilize medical, psychiatric, psychological and other social and rehabilitative services and material resources made available to such parent" (Social Services Law, § 384-b, subd 7, par [c]). To meet this requirement, the parents must formulate and act to accomplish a feasible and realistic plan (*Matter of Orlando F., supra,* pp 110-111). At a minimum, the parents must take steps to correct the conditions that led to the removal of the children from their home and to project a future course of action, taking into account consideration of how the children will be supported financially, physically and emotionally (*Matter of Leon RR,* 48 NY2d 117, 125). Irrespective of whether appellants took steps to correct the conditions that led to the removal of the children from their home, the record conclusively establishes their failure to project a future course of action. As noted by Family Court, the only real plan for the future of these children was that formulated by respondent pursuant to court order. Appellants not only failed to take any steps toward formulating and acting upon a plan for the future financial, physical and emotional support of their children, but they also displayed a total lack of awareness of the need for such a plan, which should include a method for coping with the problems created by the children's prolonged separation from appellants and the strong psychological ties that the children have formed with their foster parents (see *Matter of Roxann Joyce M.,* 75 AD2d 872, 873). The formulation of such a plan calls for "a degree of prescience and insight that some people lack — especially the parents of a child who has been involuntarily removed from their custody" and, therefore, "the adequacy of the parents' plan must not be evaluated with reference to unrealistically high standards" (*Matter of Leon RR, supra,* p 125). But this principle cannot relieve appellants of the obligation to make some attempt to formulate and act upon a realistic plan for the future of their children. The record further reveals that appellants refused to accept the counseling services of the Southern Ulster Mental Health Clinic, which were offered by respondent after a psychological evaluation of appellants. They also refused to participate in a child enrichment program designed to develop parenting skills, or to seek family planning counseling as suggested by respondent. The refusal to participate in these programs is a factor to be considered in evaluating appellants' future plans for their children (Social Services Law, § 384-b, subd 7, par [c]). Accordingly, we find clear and convincing evidence in the record to support Family Court's finding that appellants' children are permanently neglected.[2] The judgment permanently terminating appellants' parental rights should be affirmed. Judgment affirmed, without costs. Mahoney, P. J., Kane, Casey, Weiss and Levine, JJ., concur.

---

2. Furthermore, in exercising our power independently to determine the facts based upon the evidence in the record (*Kay-Fries, Inc. v Martino,* 73 AD2d 342, 350, app dsmd 50 NY2d 1056; *Wettlaufer v State of New York,* 66 AD2d 991, 993), and applying the clear and convincing standard, we arrive at the same conclusion as the Family Court.